UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AGATHA L. SIMS                                      CIVIL ACTION

VERSUS                                                 No. 06-10454

ROUX LABORATORIES, INC.                          SECTION: I/5

ORDER AND REASONS

Before the Court is the motion of defendant,[1] Roux Laboratories, Inc., to strike certain allegations from plaintiff's supplemental, amending, and restated complaint.[2]  Additionally, defendant requests that the Court issue a protective order limiting discovery, admission of proof, and argument concerning these allegations.[3]  Plaintiff, Agatha Sims, opposes the motion.[4]  For the following reasons, defendant's motion to strike is **GRANTED IN PART AND DENIED IN PART**.  Defendant's motion for issuance of a protective order is **DENIED**.

*BACKGROUND*

Plaintiff originally filed her complaint in this Court on November 17, 2006.[5]  Plaintiff

---

[1] Rec. Doc. No. 31.

[2] Rec. Doc. No. 26.

[3] Rec. Doc. No. 31, p. 2.

[4] Rec. Doc. No. 32.

[5] Rec. Doc. No. 1.

1

then filed an amended complaint on June 19, 2007.[6]  In her amended complaint, plaintiff alleges

retaliation in violation of Title VII of the Civil Rights Act of 1964 § 704(a), 42 U.S.C. § 2000e-3

(2006) ("Title VII") for opposing discriminatory practices at Roux Laboratories, Inc., (Roux).  It

also alleges the defendant created a hostile work environment and discriminated against older

female employees in violation of the Age Discrimination in Employment Act of 1967 § 4(d), 29

U.S.C. § 623(d) (2006) ("ADEA").[7]

Defendant asserts that certain allegations included in plaintiff's amended complaint

should be stricken because they are protected by the attorney-client privilege.  Specifically,

defendant urges that communications made during alleged interviews by Roux's attorney with

plaintiff,[8] as well as the related communications between the attorney and Roux, are privileged.[9]

---

[6] Rec. Doc. No. 26.

[7] Rec. Doc. No. 1, p. 3; Rec. Doc. No. 26, paras. 15, 25.

[8] Specifically, there are two interviews alleged to have taken place which serve as the basis for this motion to strike.  Rec. Doc. No. 26, paras. 17-19, 21.  The first allegedly occurred as a telephone conference call "[s]ometime after Mines filed her complaint of discrimination."  *Id* para.17.  The second interview allegedly occurred in Florida, where plaintiff was instructed to come early to a scheduled sales meeting.  *Id.* para. 21.  Both interviews were called for the purpose of discussing a lawsuit filed by a different employee, Jacqueline Mines, against Roux.  *Id.* paras. 17, 21.

[9] The interviews in question are discussed in plaintiff's amended complaint, paragraphs 17, 18, 19, and 21. *Id.* paras. 17-19, 21.  These specific paragraphs state:

> 17.
> Sometime after Mines filed her complaint of discrimination, an attorney for Colomer, and Sabina Carini, Vice President of Human Resources, arranged a conference call with Plaintiff concerning the litigation initiated by Jacqueline Mines against Colomer.  Specifically, the attorney asked Plaintiff about the comments made by Smith during the 2001 sales meeting, and when Plaintiff repeated the comments, the attorney stated words to the effect that "that was not what Dennis meant."  Plaintiff replied to the attorney that he had not asked her what Dennis Smith had meant, but what he had said.
> 18.
> Further, during the course of the telephone conversation described above, plaintiff informed attorney and Carini that Plaintiff herself had also been discriminated against at Colomer because she was a woman and because of her age.  She gave examples of the discrimination, and specifically requested that Colomer investigate her complaint.

2

Defendant further requests that the Court issue a protective order limiting discovery, admission of proof, and argument regarding these privileged communications.[10]

*LAW AND ANALYSIS*

**I.      Standards of Law**

*A.      Choice of Law*

When deciding questions of privilege "that arise in the course of adjudication of federal rights," federal common law governs. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). This case is predicated on violations of Title VII and the ADEA and, therefore, federal common law governs due to the adjudication of federal rights.

*B.      Motions To Strike*

Motions to strike are disfavored because they are drastic remedies. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale*, 677 F.2d 1045, 1057-58 (5th Cir. 1982). However, when considering a motion to strike, those portions of a complaint that make use of privileged

---

19.
    Despite Plaintiff's clear request during the telephone conversation described above, and despite Plaintiffs' repeated requests to Sabrina Carini in subsequent conversations that her complaint be investigated, neither Carini, the attorney, nor any other employee or representative of Colomer undertook, to the knowledge of Plaintiff, an investigation of her very serious allegations of ongoing age and gender discrimination at Colomer.
        . . . .
21.
    During the first week of July, 2004, Plaintiff was contacted by the Colomer secretary in Florida and instructed to come to Florida early for a sales meeting that was scheduled for July 5th, for the purpose of again discussing Mines' lawsuit. Plaintiff complied, and was interviewed by Robert Riegel's associate, who informed her they were preparing for the lawsuit. Plaintiff repeated what she had said during the earlier telephone conference concerning the March 2001 sales meeting, and against [sic] stated that she had been discriminated against also; and that Sabrina Carini had not gotten back with her concerning an investigation.

[10] Rec. Doc. No. 31, p. 2.

3

communications may be removed from the complaint.  Fed. R. Civ. P. 12(f) ("Upon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter."); *see Alldread v. City of Grenada, Miss.*, No. WC89-93-B-D, 1991 WL 501642, at *7 (N.D. Miss. Aug. 5, 1991) (granting defendant's motion to strike all excerpts cited by plaintiffs that made use of privileged evidence).  Therefore, determining which allegations are covered by the attorney-client privilege is necessary.

C.     *Attorney-Client Privilege*

"The burden of establishing [the attorney-client] privilege rests on the party who invokes it." *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991).  The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981).  Generally, the privilege exists to protect confidential communications where legal advice of any kind is sought from a professional legal adviser acting in his capacity as such.  8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292, at 554 (John T. McNaughton rev. ed. 1961); *see Lenihan v. Stewart Enters., Inc.*, No. CIV.A. 01-2895, 2002 WL 31001842, at *2 (E.D. La. Sept. 4, 2002).  The scope of the privilege encompasses not only the giving of professional advice by the attorney, but also the "giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390, 101 S. Ct. at 683.  However, the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403-04, 96 S. Ct. 1569, 1577-78, 48 L. Ed. 2d 39 (1976).

4

The privilege also exists to protect corporate clients.  A corporation is entitled to refuse to disclose confidential communications protected by the attorney-client privilege and it may prevent its attorneys or employees from disclosing such communications.  *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services."); *see Lenihan*, 2002 WL 31001842, at *3 ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications . . . between himself or his representative and his lawyer . . . .").

## II.     Discussion

A.     *Communications Within the Scope of the Corporation's Attorney-Client Privilege*

Roux, as a corporate client, is entitled to assert the attorney-client privilege, and it can prevent plaintiff from disclosing confidential communications that are within the attorney-client privilege.  Communications made by employees of the corporation, even lower-level employees, can be within the scope of such privilege.  *Upjohn Co.*, 449 U.S. at 393-96, 101 S. Ct. at 685.  However, not all communications made by an employee to an attorney are privileged.

In order for such communications to be within the scope of the attorney-client privilege, they must satisfy a three-prong test.  The communications must:  (1) concern matters within the scope of the employee's duties, (2) be for the purpose of obtaining or providing legal advice, and (3) be made in a situation where the employee, himself, is sufficiently aware that the employee is being questioned in order for the corporation to obtain legal advice.  *See id.* at 394, 101 S. Ct. at

685; *United States v. El Paso*, 682 F.2d 530, 538-539 & n.8 (5th Cir. 1982) ("[C]ommunications from lower echelon employees are within the privilege as long as the communications were made to the attorney to assist him in giving legal advice to the client corporation."); Edna Selan Epstein, Am. Bar Ass'n, *The Attorney-Client Privilege and the Work-Product Doctrine* 102 (4th ed. 2001).  In this case, some communications between the plaintiff and Roux's attorney were privileged communications.

At least with respect to questions and answers about Mines, the first part of the test is satisfied because the interviews of plaintiff by defendant's attorney concerned a matter within the scope of her duties.  Plaintiff had a duty to answer questions of the corporation concerning a co-worker's complaint of discrimination against Roux.  *See Ellenberg v. Tuffy's Division of Starkist Foods, Inc.*, Civil No. 4-84-883, 1985 WL 1559, at *5 (D. Minn. June 5, 1985).

The second prong, i.e., whether the communications were for the purpose of obtaining or providing legal advice, is partially satisfied.  The interviews were held to obtain information about ongoing litigation initiated by a different Roux employee against Roux.  Therefore, parts of the communications during the interview were for the purpose of providing legal advice to the corporation with regard to that ongoing litigation.  *See Upjohn Co.*, 449 U.S. at 390-94, 101 S. Ct. at 683-85 (holding that interviews conducted by a corporation's attorney with the corporation's employees concerning litigation was for the purpose of providing legal advice to the corporation and they were, therefore, privileged).

In the context of these interviews, however, only those communications made *for the*

*purpose of obtaining or providing legal advice to the corporation* are privileged.[11]  Plaintiff may relate that she informed corporate counsel that she was being discriminated against as such statement would not fit within that framework.  *See EEOC v. Tex. Ear, Nose & Throat Consultants, P.L.L.C.*, No. Civ.A. H-05-3374, 2006 WL 626309 (S.D. Tex. Mar. 10, 2006) (holding that paragraphs in a complaint relating to the fact that an employee informed corporate counsel that she had been retaliated against were factual events not subject to the attorney-client privilege).  The purpose of the interviews was to gather information about the Mines' lawsuit and to use such information to advise the corporate client.  The Roux attorneys were not interviewing plaintiff in order to receive her complaints of discrimination.  Therefore, the alleged statements by plaintiff informing Roux's corporate counsel of her own discrimination[12] are not covered within the scope of the attorney-client privilege and they should not be stricken from the complaint.

Statements made by the attorney that are "unrelated to matters within the scope of [plaintiff's] corporate duties or to securing legal advice for the corporation" are not privileged communications.  *Ellenberg*, 1985 WL 1559, at *5 ("It is . . . apparent that the communications were not made for the purpose of securing legal advice for the corporation. . . .  [Therefore,] assertions of attorney-client privilege . . . are without merit.").  The attorney-client privilege "protects communications only to the extent the communications may disclose confidential

---

[11] Defendant argues that all the challenged communications are privileged because the communications occurred during investigative interviews.  Rec. Doc. No. 34, p. 4.  However, the cases cited do not support that broad of a proposition.

[12] Specifically, the statements referred to here are those alleged in the entirety of paragraphs 18 and 19, as well as a portion of paragraph 21.  Rec. Doc. No. 26, paras. 18-19, 21.  In paragraph 21, plaintiff's statement concerning her discrimination is:  "and against [sic] stated that she had been discriminated against also; and that Sabrina Carini had not gotten back with her concerning an investigation."  *Id.* para. 21.

information provided . . . for the purpose of facilitating legal advice." *Soriano v. Treasure Chest Casino, Inc.*, No. Civ.A. 95-3945, 1996 WL 736962, at *2 (E.D.La. Dec. 23, 1996); *see Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985).  Statements made by Roux's attorney to plaintiff that were not for the purpose of securing legal advice for the corporation are not privileged.  Specifically, the statement "that was not what Dennis meant," which was allegedly made by Roux's attorney, is not privileged because it was not for the purpose of securing legal advice for the corporation.[13]

The Court is finally left to consider the remaining statements described in paragraphs 17 and 21 that were made for the purpose of obtaining or providing legal advice.  Plaintiff was aware that she was being questioned in order for the corporation to obtain legal advice about a co-employee's lawsuit.  In plaintiff's amended complaint, she states that the first interview was arranged to discuss litigation initiated by another employee.[14]  Plaintiff indicates that the second interview was scheduled "for the purpose of again discussing Mines' lawsuit."[15]  The plaintiff admits that both interviews were conducted for the purpose of discussing that ongoing lawsuit and, accordingly, plaintiff knew that she was being questioned in order for the corporation to obtain legal advice from the attorney regarding that matter.  Therefore, with respect to certain portions of paragraphs 17 and 21, the three-part test used for determining when an employee's statements to corporate counsel are privileged is met.[16]

---

[13] Rec. Doc. No. 26, para. 17.

[14] *Id.* para. 17.

[15] *Id.* para. 21.

[16] The privileged statements include those made in paragraph 17:  (1) "Specifically, the attorney asked Plaintiff about the comments made by Smith during the March 2001 sales meeting, and when Plaintiff repeated the comments," and (2) "Plaintiff replied to the attorney that he had not asked her what Dennis Smith had meant, but

B.      *Protective Order Barring Discovery*

Although defendant also requests this Court issue a protective order, the Court declines to do so.  If, during discovery or depositions, an issue arises regarding such privileged information, the defendant may address the problem to the United States Magistrate Judge.  The reason for employing the standard procedure is that, at this point in the litigation, it is impossible to determine what specific information might be solicited and which parts of that information might be privileged.

Accordingly,

**IT IS ORDERED** that defendant's motion to strike is **GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** in that plaintiff's allegations involving privileged communications are **STRICKEN** from the amended complaint, and **DENIED** in that plaintiff's

---

what he had said."  *Id.*  The privileged statement from paragraph 21 is:  "Plaintiff repeated what she had said during the earlier telephone conference concerning the March 2001 sales meeting." *Id.* para. 21.

While the last group of communications discussed herein are within the scope of the attorney-client privilege and protected from disclosure, the Court notes that the privilege only protects oral or written *communications*; "it does not protect disclosure of underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 385, 101 S. Ct. at 685; *see Lenihan v. Stewart Enters., Inc.*, No. CIV.A. 01-2895, 2002 WL 31001842, at *3 (E.D. La. Sept. 4, 2002); *Ellenberg*, 1985 WL 1559, at *5.  While the communications made during the interview regarding Mines' lawsuit by or to the attorney are privileged, the facts underlying such communications are not.  The United States Supreme Court stated, regarding the difference between privileged communications and unprivileged facts:

> "A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of fact into his communication to his attorney."

*Upjohn Co.*, 449 U.S. at 395-96, 101 S. Ct. at 685-86 (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

The allegations that defendant moves to strike are comprised of both unprivileged factual allegations as well as privileged communications.  For example, the fact that plaintiff met with Roux's attorney and the Vice President of Human Resources to discuss litigation initiated by another employee is not a privileged communication, but an unprivileged fact.  However, in the same paragraph of plaintiff's amended complaint, questions the attorney asked plaintiff in the context of the Mines' litigation are privileged communications that should be stricken from the complaint.

allegations involving unprivileged facts and communications remain a part of the amended complaint.

      **IT IS FURTHER ORDERED** that defendant's motion for the issuance of a protective order be **DENIED**.

      New Orleans, Louisiana, August __31st__, 2007.

                                  **LANCE M. AFRICK**
                        **UNITED STATES DISTRICT JUDGE**